IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| Torrance M., <br><br> Plaintiff, <br><br> v. <br><br> KILOLO KIJAKAZI, ACTING COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, <br><br> Defendant. | No. 3:21-cv-03218-L-BT |

### FINDINGS, CONCLUSIONS, AND RECOMMENDATION
### OF THE UNITED STATES MAGISTRATE JUDGE

Before the Court is Plaintiff Torrance M.'s[1] civil action seeking judicial review pursuant to 42 U.S.C. § 405(g) of a final adverse decision by the Commissioner of Social Security. (ECF No. 1). The District Court referred the case to the United States magistrate judge for pretrial management under 28 U.S.C. § 636(b) and a standing order of reference. (ECF No. 4). For the reasons explained below, the District Court should AFFIRM the Commissioner's decision.

### Background

Plaintiff alleges that he is disabled due to a variety of physical and mental impairments, including diabetes, pain and swelling in his hands and feet, obesity, trouble sleeping due to sleep apnea, and depression. Tr. 12 (ECF No. 12-1). He has

---

[1] The Court uses only Plaintiff's first name and last initial as instructed by the May 1, 2018 Memorandum Re: Privacy Concern Regarding Social Security and Immigration Opinions issued by the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

1

a high school education and past work experience as a delivery driver, manager, and warehouse worker. Pl.'s Br. 2; Tr. 67. But he has not engaged in substantial gainful activity since August 1, 2017. Tr. 23.

After his applications for disability insurance benefits (DIB) and supplemental security income (SSI) were denied initially and on reconsideration, an Administrative Law Judge (ALJ) held an administrative hearing on October 20, 2020, and a supplemental hearing on April 8, 2021.[2] At the first hearing, Plaintiff amended his alleged onset date to August 1, 2017, due to a prior, unfavorable decision issued on July 30, 2017. Tr. 10. On May 5, 2021, the ALJ issued a decision finding that Plaintiff has not been under a disability within the meaning of the Social Security Act from August 1, 2017, through the date of the decision, and thus he is not entitled to DIB or SSI. Tr. 11.

The ALJ found Plaintiff suffered from type II diabetes mellitus with diabetic retinopathy and neuropathy, hypertension, obesity, chronic venous insufficiency, obstructive sleep apnea, and a mood disorder, described as major depressive disorder or bipolar disorder. Tr. 12-13. But the ALJ found that Plaintiff did not have an impairment or a combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R., Part 404, Subpart P, Appendix 1. Tr. 13. The ALJ also determined that Plaintiff had the

---

[2] Due to extraordinary circumstance presented by the Coronavirus Disease 2019 (COVID-19) Pandemic, all participants attended the hearings by telephone. Tr. 26.

Residual Functional Capacity (RFC) to perform a limited range of light work as defined in 20 CFR 404.1567(b) and 416.967(b). Tr. 15. Specifically, the ALJ found:

> [Plaintiff] can never climb ladders, ropes or scaffolds, kneel, crouch or crawl but he can occasionally climb ramps and stairs, balance and stoop. He must be allowed to alternate sitting and standing at thirty-minute intervals. [Plaintiff] can never push or pull or operate foot controls with the feet bilaterally. He can frequently handle, finger and feel. [Plaintiff] must avoid concentrated exposure to extremes of noise, such as heavy traffic, light, such as direct sun, heat, cold, vibration and environmental irritants such as dust, fumes, odors, gases and poor ventilation. [Plaintiff] must avoid hazards such as inherently dangerous moving machinery and unprotected heights. He would have limited vision such that he would need to take special safety precautions for things like parking curbs or stairs or if there were obstruction in the usual walking path such as a box or other object.

Tr. 15. The ALJ further determined that Plaintiff was unable to perform his past relevant work, but that given his age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that he could perform. Tr. 22. Based on the testimony of a vocational expert (VE), the ALJ concluded that Plaintiff could work as an office helper and garment sorter, and that these jobs exist in significant numbers in the national economy. Tr. 22-23.

Plaintiff appealed the ALJ's decision to the Appeals Council, but the Appeals Counsel denied review. *See* TR. 1. Plaintiff then filed this action in federal district court, in which he contends the ALJ erred in finding him not disabled.

## Legal Standards

Judicial review of the Commissioner's findings is limited to whether the decision to deny benefits is supported by substantial evidence and whether the

proper legal standards were utilized. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994) (citing 42 U.S.C. §§ 405(g), 1383(c)(3)). Substantial evidence is defined as "that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion; it must be more than a scintilla, but it need not be a preponderance." *Leggett*, 67 F.3d at 564. The reviewing court does "not reweigh the evidence, try the issues de novo, or substitute" its own judgment, but rather scrutinizes the record as a whole to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236. An "ALJ's decision is not subject to reversal, even if there is substantial evidence in the record that would have supported the opposite conclusion, so long as substantial evidence supports the conclusion that was reached by the ALJ." *Corpany v. Colvin*, 2014 WL 1255316, at *9 (N.D. Tex. Mar. 26, 2014) (citing *Dollins v. Astrue*, 2009 WL 1542466, at *5 (N.D. Tex. June 2, 2009)).

"Absent an error that affects the substantial rights of a party, administrative proceedings do not require 'procedural perfection.'" *Wilder v. Colvin*, 2014 WL 2931884, at *5 (N.D. Tex. June 30, 2014) (quoting *Taylor v. Astrue*, 706 F.3d 600, 603 (5th Cir. 2012)). "The ALJ is not required to discuss every piece of evidence in the record nor must the ALJ follow formalistic rules of articulation." *Hunt v. Astrue*, 2013 WL 2392880, at *7 (N.D. Tex. June 3, 2013) (citing *Castillo v. Barnhart*, 151 F. App'x 334, 335 (5th Cir. 2005)); *see also Falco v. Shalala*, 27 F.3d 160, 164 (5th Cir. 1994) ("That [the ALJ] did not follow formalistic rules in her articulation compromises no aspect of fairness or accuracy that her process is

4

designed to ensure."). "Procedural errors affect the substantial rights of a claimant only when they 'cast into doubt the existence of substantial evidence to support the ALJ's decision.'" *Wilder*, 2014 WL 2931884, at *5 (quoting *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988)). "Remand is required only when there is a realistic possibility that the ALJ would have reached a different conclusion absent the procedural error." *Id.* (citing *January v. Astrue*, 400 F. App'x 929, 933 (5th Cir. 2010)).

## Analysis

In this action, Plaintiff asserts that the decision of the ALJ is not supported by substantial evidence because, first, the "ALJ substituted his own medical judgment to determine Plaintiff's RFC" and, second, "the ALJ failed to incorporate functional limitations resulting from all impairments which the ALJ deemed severe into his RFC." Pl.'s Br. 6, 9. But neither of these arguments support remand; therefore, for the following reasons, the Court should find that substantial evidence supports the ALJ's RFC determination and affirm the ALJ's decision.

1. <u>The ALJ did not improperly substitute his own medical judgment to determine Plaintiff's RFC.</u>

Plaintiff first argues that the ALJ's RFC determination is not supported by substantial evidence because the ALJ rejected opinions from two State agency medical consultants (SAMCs) and made his RFC determination without support from any medical opinion evidence in the record. Pl.'s Br. 6.

An ALJ's RFC analysis determines the most that a person can still do despite recognized limitations. 20 C.F.R. § 404.1545(a)(1). The RFC determination is a "combined medical assessment of an applicant's impairments with descriptions by physicians, the applicant, or others of any limitations on the applicant's ability to work." *Hill v. Saul*, 2020 WL 6370168, at *6 (N.D. Tex. Sept. 29, 2020) , report and recommendation adopted, 2020 WL 6363878 (N.D. Tex. Oct. 29, 2020) (cleaned up) (quoting *Hollis v. Bowen*, 837 F. 2d 1378, 1386-87 (5th Cir. 1988) (per curiam)). It "is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." SSR 96-8P, 61 Fed. Reg. 34474, 34475 (July 2, 1996). An individual's RFC should be based on all relevant evidence in the case record, including opinions submitted by medical sources. 20 C.F.R. § 404.1545(a)(3); SSR 96-8p, *supra*.

"Determining a [claimant's RFC] is the ALJ's responsibility, and [the ALJ] has the authority and duty to weigh the evidence and reach any conclusion supported by substantial evidence." *Gonzales v. Astrue*, 231 F. App'x 322, 324 (5th Cir. 2007) (per curiam). Under the current regulations, ALJs do "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)." 20 C.F.R. § 404.1520c(a); *Stephens v. Saul*, 2020 WL 7122860, at *5 (N.D. Tex. Dec. 4, 2020) (citation omitted); *accord Winston v. Berryhill*, 755 F. App'x 395, 402 n.4 (5th Cir. 2018) (citation omitted). And, in determining a claimant's RFC, ALJs are not limited to simply adopting one or more medical opinions from the administrative record;

6

rather they may consider all the evidence in the record. *Gutierrez v. Barnhart*, 2005 WL 1994289, at *7 (5th Cir. Aug. 19, 1995). Even the absence of medical opinions does not necessarily render a record inadequate to support an ALJ's RFC determination. *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995); *see also Joseph-Jack v. Barnhart*, 80 F. App'x 317, 318 (5th Cir. 2003) (rejecting argument that there was no substantial evidence "because the record was devoid of a [RFC] assessment by a medical source"). But "as a non-medical professional, the ALJ is not permitted to draw his own medical conclusions from some of the data, without relying on a medical expert's help." *Kenneth S. v. Saul*, 2019 WL 3881618, at *5 (N.D. Tex. July 31, 2019) (Horan, J.), *adopted by* 2019 WL 3859653 (N.D. Tex. Aug. 15, 2019) (Lindsay, J.) (internal quotations omitted) (quoting *Frank v. Barnhart*, 326 F.3d 618, 621-22 (5th Cir. 2003)). ALJs must resist the urge to "play[ ] doctor" and make independent assessments of raw medical data. *Kenneth S.*, 2019 WL 3881618, at *7.

Here, the SAMC at the initial determination level found that Plaintiff had no severe physical impairments, only mental. Tr. 109, 123. And at the reconsideration level, the SAMC found that Plaintiff had the severe impairment of chronic kidney disease—but could still perform the full range of medium work. Tr. 137, 153. The ALJ, however, found that Plaintiff had several severe impairments—including type II diabetes mellitus with diabetic retinopathy and neuropathy, hypertension, obesity, chronic venous insufficiency, obstructive sleep apnea, and a mood disorder, described as major depressive disorder or bipolar disorder—and that he

could only perform a limited range of light work. Tr. 15-16. Thus, Plaintiff argues, the ALJ "rejected" the SAMC opinions and substituted his own medical evaluation of Plaintiff's impairments to determine his RFC. *See* Pl.'s Br.

However, Plaintiff's argument mischaracterizes the record. In a thorough and well-reasoned written decision, the ALJ summarized the medical evidence. Tr. 15-21. He considered records from (1) medical providers at Parkland Health Systems (Tr. 16); (2) nutrition reassessments (Tr. 17); (3) ophthalmology visits (Tr. 17); (4) dietitian consultations (Tr. 18); (5) a urology clinic (Tr. 18), (6) a neurologist and polysomnogram testing (Tr. 19); (7) notes from a consultative ophthalmological evaluation conducted by Dr. James Gray (Tr. 20); and (8) a mental status examination conducted by Rosemary Brucken, Psy.D. (Tr. 20). Contrary to Plaintiff's argument, the ALJ explained that he found the opinions of the SAMCs "*generally persuasive* regarding limitations as it [was] consistent with the objective findings on examination" at the time of the initial and reconsideration determinations. Tr. 21 (emphasis added). And having considered "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and 416.929 and SSR 16-3p" and "the medical opinion(s) and prior administrative medical finding(s) in accordance with the requirements of 20 CFR 404.1520c and 416.920," the ALJ determined Plaintiff could perform a limited range of light work and explained that this RFC "is supported by the objective findings from Dr. Gray, Parkland Health and Dr. Brucken." Tr. 15, 20.

Dr. Gray, Parkland Health, and Dr. Brucken all found that Plaintiff's obesity and uncontrolled diabetes contributed significantly to his alleged disabilities, including vision problems, kidney problems, pain in his hands and feet, exhaustion, and depression. But none of these providers—or any other medical source—opined that Plaintiff was disabled. Rather, they prescribed a generally conservative course of treatment and did not place restrictive limitations on Plaintiff's ability to do work-related activities.

The medical providers at Parkland Health diagnosed Plaintiff with—among other things—chronic diarrhea, chronic kidney disease, type II diabetes mellitus, diabetic neuropathy, hypertension, edema, knee pain, and obstructive sleep apnea. *See, e.g.,* Tr. 429-32. From 2017 through 2020, Plaintiff was prescribed medication to manage his conditions. He also was counseled to follow a specific diet and to exercise—"regular[ly]", "three to five times per week for at least fifteen minutes," "three to four times per week for forty minutes at a time," and "30 minutes for at least 5 days a week"—in order to lose weight and manage his diabetes and kidney disease. *See* Tr. 450-51, 453, 459, 466, 475, 476, 478, 497, 510, 511, 525, 548, 549, 1179, 1201. However, as the ALJ noted, Plaintiff's treatment records reflect "poor compliance" with dietary restrictions and exercise recommendations. Tr. 16; *See* Tr. 17 ("In 2018, his weight had risen and his kidney function had declined to forty-nine percent" again due to poor compliance of doctor's instructions.); *id.* 18-19 (In 2019, "Plaintiff reported getting minimal exercise at the time" and "his kidney functioning had declined to forty-two percent."); *id.* 11 (In 2020, Plaintiff only had

9

"fair dietary compliance," and he was counseled on "improved compliance focusing on reducing nutritional impact on his kidneys.").

After Plaintiff underwent laser eye surgery in 2017 and reported "clearer eyesight" at his follow-up, Tr. 17, Plaintiff went to Dr. Gray in 2019 for a consultative visual exam. *See* Tr. 1004-1009. In his report, Dr. Gray found Plaintiff suffered from proliferative diabetic retinopathy, along with cataracts, and obesity. Tr. 1007. However, Plaintiff's vision in each eye could be corrected to 20/30. Tr. 1006. Dr. Gray specifically observed that Plaintiff had no difficulty ambulating. Tr. 1007. He estimated that any impairment would be related to Plaintiff's obesity. Tr. 1007. Accordingly, Dr. Gray recommended glasses and weight reduction, and he concluded Plaintiff's prognosis was "fair to good, depending on compliance." Tr. 1007.

Treatment records from Parkland Health also show that Plaintiff was seen in the renal clinic in 2019 to evaluate his kidney disease. Plaintiff informed the renal clinic that his kidney function had declined from 50% to 42% from 2017 to 2019. Tr. 15-16. Plaintiff was diagnosed with chronic kidney disease, stage 3, "likely due to uncontrolled diabetes." Tr. 16; Tr. 1018. The renal clinic noted, though, that Plaintiff had a "normal range of motion, normal cardiac rate and rhythm and normal mood and affect." Tr. 16. And "[i]maging showed no specific kidney abnormalities." *Id.*

Plaintiff also reported to Parkland Health that his sleep quality was "terrible," he wakes up ten to fifteen times per night, and he struggles with daytime

sleepiness. Tr. 19. Doctor's notes state Plaintiff "reported having difficulty tolerating his CPAP mask" and "his machine showed two to three hours usage." *Id.* At another appointment, Plaintiff stated "he had difficulty with his mask staying on his face overnight." Tr. 20. Despite these difficulties, Plaintiff's neurological exam showed only minor cognitive impairments due to sleep apnea. Tr. 434.

The record also reflects that Plaintiff underwent a mental status examination with Dr. Brucken in 2019. *See* Tr. 20. Plaintiff drove himself to the appointment and arrived on time. *Id.* Dr. Brucken reported that Plaintiff was a "poor historian," but "found no specific deficits of attention, concentration or memory, and [Plaintiff] reported having contact with his parents, sister, son and some friends." *Id.* Lastly, Dr. Brucken concluded that Plaintiff's "depression was secondary to medical concerns and that this would improve with stabilization of his health issues." *Id.* (citing C-4F).

While the ALJ declined to adopt the SAMC opinions on Plaintiff's limitations, he did not "play doctor" and independently determine Plaintiff's RFC based on his own lay opinion of Plaintiff's limitations. Rather, as the ALJ's decision concludes, numerous objective findings from Plaintiff's medical providers support the RFC determination. Therefore, the Court should find that substantial evidence supports the RFC determination.

2. <u>The ALJ's RFC assessment sufficiently addresses Plaintiff's severe impairments.</u>

An ALJ's RFC analysis determines the most that a person can still do despite recognized limitations. 20 C.F.R. § 404.1545(a)(1). The RFC determination is a "combined medical assessment of an applicant's impairments with descriptions by physicians, the applicant, or others of any limitations on the applicant's ability to work." *Hill*, 2020 WL 6370168, at *3 (cleaned up) (quoting *Hollis*, 837 F. 2d at 1386-87). It "is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." SSR 96-8p, 61 Fed. Reg. 34474, 34475 (July 2, 1996). An individual's RFC should be based on all relevant evidence in the case record, including opinions submitted by medical sources. 20 C.F.R. § 404.1545(a)(3); SSR 96-8p, *supra*.

Plaintiff asserts that the ALJ should have included additional limitations to address his need to elevate his feet above his waist and frequently use the restroom due to his prescribed diuretics. Pl.'s Br. 9-10. Plaintiff also points out that the VE testified that "a need to elevate the legs at waist level or above 'is not a reasonable job accommodation, so, there would be no jobs in the national economy.'" Pl.'s Reply 6 (ECF No. 18) (quoting Tr. 70 (Transcript of Oral Hearing, dated 04/08/2021—VE Testimony)). And the need for frequent bathroom breaks outside the normal break period would lead to termination. Pl.'s Reply 6 (ECF No. 18) (quoting Tr. 70 (Transcript of Oral Hearing, dated 04/08/2021—VE Testimony)). Plaintiff also argues, in reference to his prescribed diuretics, that the "ALJ is

12

required to consider the 'type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms.'" Pl.'s Br. 11 (citing *Crowley v. Apfel*, 197 F.3d 194, 199 (5th Cir. 1999)) (some citations omitted).

The Commissioner, however, argues "that the ALJ sufficiently addressed Plaintiff's neuropathy and chronic venous insufficiency." Def.'s Br. 10. (citing Tr. 21 ("He has allowed the claimant to alternate sitting and standing and limited use of foot controls to accommodate any neuropathy the claimant experiences.")). And the ALJ is allowed to disregard "hypothetical testimony by a VE" when it is unsupported by the evidence. Def.'s Br. 10 (citing *Owens v. Heckler*, 770 F.2d 1276, 1282 (5th Cir. 1985)).

Further, although the ALJ found that the "medically determinable impairments could reasonably be expected to cause the [swelling in the legs and frequent use of the restroom]," the ALJ concluded that "the [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." Tr. 16. For example, Plaintiff states that he needs to have his legs elevated above his waist, *see* Pl.'s Br. 8-9; however, medical records show that Plaintiff was instructed to wear knee-high compression socks and elevate his legs at night, while he sleeps. Def.'s Br. 10 (first citing Tr. 565; and then citing Pl.'s Br. 10-11); Tr. 16. "[T]he medical records [also] reveal that Plaintiff reported that his diarrhea

improved when he was eating less, *see* Tr. 1208, and he was advised to "reduce nutrition related impact on kidneys," *see* Tr. 1226. Def.'s Br. 10.

The ALJ also stated that he "considered the testimony of the [Plaintiff] and the [. . . ] medical evidence and he notes inconsistencies between the [Plaintiff's] statements to medical providers and his testimony." TR. 20-21. The ALJ provided a non-exhaustive list of some these inconsistencies:

> While [Plaintiff] reports declining kidney functioning and retinopathy and neuropathy from his diabetes, his treatment records from Parkland Health show poor compliance with dietary restrictions on consuming soda and appropriate portion sizes. He continues to drive, according to medical records, indicating he feels he has adequate vision to do so. [Plaintiff] has been noted to be caring for elderly parents and he is independent in self care and does some cooking and cleaning.

Tr. 12. Thus, the ALJ sufficiently accounted for Plaintiff's limitations, symptoms, and potential effects of Plaintiff's medication, based on the medical records, when making his RFC determination.

However, even if the ALJ erred in this evaluation, such error was harmless. Plaintiff does not cite any specific evidence in the record, *other than his own testimony*, that shows that he needs to have his feet elevated above his waist during working hours nor that he has decreased functioning that is attributable to his prescribed diuretics. *See Bassett v. Astrue*, 2010 WL 2891149, at *14 (N.D. Tex. June 25, 2010).

Accordingly, the Court should conclude that reversal is not warranted on this ground.

14

## Recommendation

Because the ALJ applied the correct legal standards, and substantial evidence supports the ALJ's decision that Plaintiff is not disabled within the meaning of the Social Security Act, the Court should AFFIRM the hearing decision in all respects.

**SO RECOMMENDED.**

February 2, 2023.

_____
REBECCA RUTHERFORD
UNITED STATES MAGISTRATE JUDGE

### INSTRUCTIONS FOR SERVICE AND
### NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415, 1417 (5th Cir. 1996).